Dr. Helen L. Horvath
2127 Arnold Way, Ste 2311
(PO Box 2311)
Alpine, CA 91901/91903
Telephone: 619-249-1393
Email: *dr.hhorvath@gmail.com*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN L. HORVATH,<br>Plaintiff,<br><br>vs.<br><br>JP MORGAN CHASE & COMPANY,<br>Defendant | Case No.: 3:21-CV-01665-BTM-AGS<br><br>[Assigned to the Honorable Barry Ted Moskowitz]<br><br>MOTION FOR A NEW TRIAL AND VACATE JUDGMENT.<br><br><u>Hearing:</u><br>Date: March 4, 2022<br>Time: 1100 am<br>Courtroom: 15B<br><br>Complaint filed: August 16, 2021<br>Requested removal date: September 22, 2021 |

Plaintiff filed complaint and defendant filed removal as stated above. Judgment was signed on January 6, 2022 awarding dismissal and denying remand. Pursuant to Fed. R. Civ. P. 59(a) to (d), plaintiff motions the court for a new trial based upon new information and other errors in judgment. *See* "Memorandum of Points and Authorities," CFPB Administrative Proceedings, 2017-CFPB-0015, and affidavit.

# Table of Contents

I. New Information........................................................................................................ 3
II. Legal Relationship Between CT Corporation (CT), Stroock, et. al. ........................................ 4
(Stoock), and Defendants............................................................................................... 4
A. CT's Declaration by Alexandre Halow.......................................................................... 5
B. Declaration.................................................................................................................. 7
III. Judgment Review – Legal Factors Impacting Judgment ....................................................... 9
**A.** Defendant's legal requirements.................................................................................... 9
**B.** Error - Notice of Removal Filing Deadline - 48 U.S.C. §1446(a)(b) ................................. 9
**C.** Domestic Mail Manual – USPS Postal Regulations .......................................................... 10
(1) Wrong Address ........................................................................................................ 10
(2) "DMM Section 508, subsection 1.5.2. Not to Address"................................................ 11
(3) Disparity in mailing address ..................................................................................... 11
(4) Defendant's claim that mail was forwarded ................................................................. 12
(5) USPS Caller Service and National Service Agreements ................................................ 12
(a) USPS Contractual Representative for CT based upon premium signature service.14
(b) DMM Section 1.2.1 Factors. ....................................................................................... 15
(c) DMM, Section 508, subsection 2.2. Pickup ................................................................... 15
(d) DMM Section 1.2.1. Factors ....................................................................................... 16
IV. Failure to Enforce Procedural Rules................................................................................ 16
A. Federal Rules of Civil Procedures 7.1 and So. Dist. Cal. Local Rule 40.2....................... 16
B. Sur-Reply.................................................................................................................... 18
V. Judgment - Misconduct by Defendant ............................................................................... 20
VI. Financial Impact ........................................................................................................... 22
a. Hearsay and lacking foundation. .................................................................................... 23
b. Court of General Jurisdiction. ........................................................................................ 23
(1) Applicable legal standards.............................................................................................. 23
(2) (3) Superior Court **..........................................................................**23
(4) Motion to Dismiss/Conclusion………..…………………;;;;…………………..…25
Exhibit A: CFPB Administrative Proceedings, 2017-CFPB-0015

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. New Information.

The judgement is against the greater weight of the evidence as outlined in this document, has errors in evidentiary rulings, and error is regulatory interpretations. The judgment made multiple incorrect assumptions that favored defendants. The court did not accept the federally regulated information provided by the United States Postal Service (USPS) to include a declaration by Postal Supervisor Muse and Postal Clerk Torres and ignored the email from Postmaster Rios (ECF 18, Exh. B-C). Exh. C shows the actual tracking number and ***USPS Tracking Intranet Tracking Number Result*** for the certified summons mailed from Superior Court (7020 1810 0002 0438 8491) was August 20, 2021 (ECF 18, Exh C, pages 35-36). The email is sent from Benjamin.riosjr@usps.gov. The tracking number coincides with CT's certified mail tracking card submitted by defendant.

Muse and Torres' declaration was misnumbered, not missing pages and was the exact document of what was sent to plaintiff. Plaintiff was unable to subpoena Muse and Torres because the Court does not permit in person hearings. Ironically, the Court accepted Halow's declaration without chain of custody information and hearsay. ECF 18, Exh. C is chain of summons custody from San Diego to CT Corp's address at 818 W. 7th St, Ste 930, Los Angeles (LA). Within Halow's declaration is the return receipt card with the tracking number above that will show

completed delivery by using the aforementioned tracking number under the USPS federal contract with CT Corp for premium signature service (*See* DMM). USPS is unable to sign for mail without the premium signature service.

On January 19, 2022, plaintiff contacted the Alpine post office to again discuss the federal mail delivery regulations associated with caller service and premium services tied to summons delivery to meet CCCP 116.340 requirements. The judgment made erroneous assumptions described in this document. This contact led plaintiff to the Domestic Mail Manual governing federal mail delivery to include Caller Service Contract information (*See* DMM).

## II. Legal Relationship Between CT Corporation (CT), Stroock, et. al. (Stroock), and Defendants

Based upon case research, the law firm, Stroock, et. al., has been legally representing the defendants since at least the 1930's under contracts. CT was incorporated in 1892 and is a long-time contractor for the defendants as a registered agent under the parent firm Wolters-Kluwer, N.V, a Dutch firm[1]. Both Stroock and CT are legally bound to JP Morgan Chase & Co. and JP Morgan Chase Bank, NA through contract relationships to provide professional support.

---

[1] Plaintiff spent more than six weeks attempting to contact Mr. Halow through researching CT's contact information. This began in Athens, GA and ended up in the Netherland. On December 6, 2021, plaintiff reached Brett Page, Halow's co-worker as described within this document.

Defendants financed a segment of the attorney's Los Angeles business address according to an interview with Stroock's partner Moskowitz.

Under contract to defendant, CT will not release any information to plaintiff due to their contractual relationship with defendants unless subpoenaed. The legal relationship between the three firms, blocks the plaintiff's ability to obtain a accurate CT Corp non-hearsay declaration based upon the stated regulatory facts in this case without subpoena. Some of the CT Corp employees who plaintiff spoke with are barred from rectifying the misleading information to the Court to allow their co-contracted firm for the defendants to win a judgment.

**A. CT's Declaration by Alexandre Halow.**

After receiving the declaration in defendant's October 19, 2021 pleading, plaintiff requested contact information for Alexandre Halow from defendant's attorney via email (ECF 18). A total of four emails ignoring requests have been made to defendant's attorneys since October 19, 2021. This blocked the plaintiff's ability to obtain corrected declaration by CT based upon USPS DMM and contract.

On or about October 22, 2021, plaintiff began reaching out to CT regarding the false and hearsay statements in the declaration. CT instructed plaintiff to file a complaint at SOPInquiries office. On October 28, 2021, Ms. Watkins of CT left a phone message stating to call back. After six attempts to reach her, plaintiff again

began researching options to contact Halow. This took until early December 2021.

Plaintiff ended up guessing how to reach Mr. Halow and contacted CT's Dallas Metroplex Office. Plaintiff was transferred to Brett Page who refused to transfer plaintiff to Mr. Halow (Affidavit). Page asked for the information via email to include the declaration. Page stated he would recontact the plaintiff by December 3, 2021 during the telephone call. Instead, Page went on "vacation" and became unavailable. In speaking with the Dallas Metroplex office, a supervisor named "Oleska" was supposed to contact the plaintiff. She also became unavailable. Plaintiff did a work around through CT's Boston office and left a phone message with Mr. Halow on or about December 6, 2021. The call was never returned, direct phone number is unknown.

Plaintiff contacted CT's parent corporation, Wolters Kluwer, NV, in the Netherlands to attempt to speak to the legal department. Defendant sent an email to Una Kang, managing attorney, to request that the declaration be corrected. Ms. Kang has refused to permit the correction to the declaration by Mr. Halow. Plaintiff's home office phone number to the Dallas Metroplex number was blocked by CT on or about December 7, 2021 to not permit contact with Mr. Halow or other CT employees to become involved in this case. Verified using plaintiff's cell phone – call went through.

**B. Declaration.** The Declaration alone is insufficient to meet the timely filing requirements under 48 U.S.C. §1446(a)(b) as it lacks foundation and is hearsay without supporting documents tied to the actual receipt at CT's Los Angeles post office (ECF 18, pgs. 24-26). The only chain of custody delivery documents provided to the Court was provided by plaintiff (ECF 18, Exh. C). Caller Service Contract is a legal Federal contract between CT and the USPS that is approved by Los Angeles Regional Postmaster Benjamin Rios, Jr. (*See* DMM this document).

Court ignored plaintiff's objection to Halow's declaration in the response to the Court as hearsay and lacking foundation. Defendants failed to provide chain of custody facts beyond the declaration. This legally creates business hearsay as the declaration lacked authentication and foundation by not verifying delivery with the USPS or providing supporting documents to the Court and plaintiff (Fed. R. Evid. 104, 602, 801, 901; ECF 18, pgs. 24-26, ECF 18, Exh. C). Per the judgment and Fed. R. Evid., business hearsay is inadmissible when not grounded in fact.

The Court's judgment inferred that the plaintiff agreed with the declaration in her pleadings. That is factually incorrect based upon ECF 18 (pgs. 24-26); creating further inaccuracies in the judgment while continuing to favor the defendants. Defendants' responses lack foundational evidence for chain of custody (ECF 18, Exh. C) to prove their case beyond reasonable doubt. These inaccuracies violate

Fed. R. Evid. 104, 602, 801, and 901 cause the defendant to not meet the requirements of 48 U.S.C. §1446(a)(b) for removal. The defendants failed to provide factual documents required to support the actual summons delivery date and time. The declaration has a return receipt card that will again lead back to the USPS/CT LA address found in ECF 18, Exh. C, USPS intranet tracking.

The declaration is legally hearsay and lacks foundation without factual evidence to support Halow's declaration. Denying plaintiff's declaration while Court allowed a hearsay declaration without chain of custody information violates the legal evidentiary requirements. To cure the plaintiff's declaration, plaintiff requests a subpoena for material be issued.

The Court relies primarily upon Halow's declaration to award dismissal of this case and deny remand. Yet, the declaration is written on Stroock, et. al.'s legal pleading form that is suspect. The declaration states the documents were processed, not received by CT, on August 23, 2021. The declaration also inferred that the documentation was reviewed within CT's database without supporting information (*See* DMM for electronic tracking of USPS mail to CT's caller service).

Under 48 U.S.C. §1446(a)(b) the defendant's responsibility ***IS to prove that the notice of removal was timely***, this failure to provide complete and factual evidentiary information to the Court and plaintiff creates the foundation to have the

plaintiff's removal case remanded and validating the legal requirement to vacate judgment since the Court did not adhere to evidentiary rules. Legally, without supporting evidence beyond a declaration the judgment should not have been granted to the defendants and should be vacated with remand awarded to plaintiff or a new trial be awarded.

Under CCCP 116.340 and removal statutes it is the date of receipt of the summons that dictates the date of removal. Superior Court has accepted the date of receipt as August 20, 2021 based upon the very evidence denied by this Court.

## III. Judgment Review – Legal Factors Impacting Judgment

**A. Defendant's legal requirements**. As stated, the requirement to prove timely removal is the defendant's responsibility not the plaintiff's responsibility.

(1) This responsibility includes providing the court with CT's USPS receipt database information, contracts for service, and other related documents to prove the date of removal met legal removal statutes. Based upon the federal contract between CT Corp and the USPS under the Domestic Mail Manual and premium signature service, the date of removal was not met.

**B. Error - Notice of Removal Filing Deadline - 48 U.S.C. §1446(a)(b)** has a required filing deadline of "within 30 days of receipt" (*See* ECF 18, pgs. 16-18). The very definition of "within 30 days of receipt" is "inside 30 days". The first day of receipt is included in filing requirements; thus, the term "within." Based

upon the removal statutes mentioned and defendant's use of processing date of August 23, 2021, the notice of removal should have been filed on September 21, 2021 to meet the statutory requirement of "within 30 days of receipt" based up calculation of days within receipt and filing (nine days in August and twenty-one days in September that match the 30-day requirement (9+21=30)). The removal statutes do not state "within 30 days after the receipt". The statutes clearly have defined the requirement within the duration of time less than or equal to 30 days. This would make the final date of removal submission September 21, 2021. This becomes a trial error in this case. (ECF 18, pp 24-26).

### C. Domestic Mail Manual (DMM)– USPS Postal Regulations

(1) **Wrong Address.** Court judgement indicated that the Superior Court sent the small claims court summons to the wrong address at the time of summons delivery[2]. The Court agreed with defendants that the caller service at the 818 W. 7th Street was not active at the time of delivery, or the wrong address was used to mail the summons. CT accepts service of process at multiple California locations. The federal government chain of custody evidence is guided under federal regulations

---

[2] Superior Court used the 1818 W. 7th St, Ste 930, Los Angeles, CA 90017 address (ECF No. 8, Exh. A.). Under DMM Section 508, subsection 1.5.2 mailing address was ignored, and summons was delivered to CT Corporation by corporate name at the 818 W. 7th Street, Ste 930, Los Angeles, CA caller service address.

and was provided to the Court and summarily ignored (ECF 18, Exh. C). The USPS has no interest in the outcome of this case. The plaintiff's evidence is federally guided and not hearsay based upon proven chain of custody.

(2) **"DMM Section 508, subsection 1.5.2. Not to Address."** Defendants questioned the delivery of the summons by stating the certified receipt summons was sent to 1818 W. 7th St, Ste 930, Los Angeles, CA vice the 818 W. 7th Street address for the caller service. Chain of custody shows that DMM Section 508, subsection 1.5.2. Not to Address was used in the delivery (ECF 18, Exh. C). Sub-section 1.5.2 states:

> "Mail addressed to a governmental or nongovernmental official by title or by organization name, but not to the address of the organization, is delivered to the organization if the organization so directs."

CT was able to pick up the summons on August 20, 2021 based upon delivery and geotagging to CT's Los Angeles address above (ECF 18 Exh. B and C).

(3) **Disparity in mailing address**. On August 15, 2021, Google populated CT's service of delivery address as the 818 W. 7th Street, Los Angeles, CA address. On or about July 15, 2021 plaintiff completed corporate structure research on the Secretary of State's (SOS) website for the CT's service of process mailing address. The SOS website showed the 818 W. 7th Street address. CT's own website

did not change the delivery address to the correct address until October 2021 based upon plaintiff contacting CT to inform the IT Department that CT's Google search engine optimization (SEO) had not been updated with the Glendale address. The SEO was after the call.

(4) **Defendant's claim that mail was forwarded.** The defendant's claimed that the USPS forwarded summons to the Glendale address (ECF 11). Clearly a false representation of the facts based upon ECF 18, Exh C that has factual summons chain of custody. This false narrative without substantial evidence, led the Court to determine CT's *date of processing* as actual date of receipt. Ignoring the legal requirements under CCCP 116.340 and 48 U.S.C. §1446(a)(b) to use the date of receipt. Since the defendant's failed to provide supporting foundational evidence with the declaration, the declaration remains hearsay under evidentiary rules and inclusion in the judgment should have been denied based upon hearsay.

**(5) USPS Caller Service and National Service Agreements.** Plaintiff was provided the USPS DMM after judgment. Prior to this motion, the Court did not accept the legal weight of the United States Postal Service (USPS) Caller Service contract between CT and the USPS. Access to the actual contract cannot be effectuated without a subpoena to the USPS or CT. As a contractor for defendant,

Trader should have access to the contract and could have submitted the documents to Court to validate Halow's claims creating foundation. Again, goes to motive.

The caller service contract is based on federal regulations through DMM Section 508, subsection 5 Caller Service. The declaration by Postal Supervisor Muse and Postal Clerk Torres was based upon the caller service agreement between CT, USPS and verified by Postmaster Rios (ECF 18, Exh. C)

Under USPS negotiated National Service Agreements (includes caller service), the contract period is typically six months to a year. Within these negotiated service agreements, the corporations permit the final delivery as received at the USPS as stated by purchasing premium services such as providing "signature on file" to sign for firm's mail when a signature is required. The mail is signed for and delivered by postal service employees to the designated caller service address.

The caller service contract for the delivery address at 818 W. 7th St, Ste 930, Los Angeles, CA was initiated by CT and approved by Postmaster Rios, Los Angeles Regional Postmaster under a federal contract for caller service agreement. Defendants failed to provide any substantive information to the court that validated Halow's declaration (ECF 18, pgs. 24-26). Objection was ignored by the Court. Based upon these factors, the remand should have been approved.

**(a) USPS Contractual Representative for CT based upon premium signature service.** Authorization to sign as CT's representative is tied to CT's use of USPS premium signature and caller service negotiated agreements for the 818 W. 7th St, Los Angeles address. Based upon the USPS contract with CT, the actual delivery date is still August 20, 2021 at 0941 a.m.

Plaintiff discussed with Postmaster Rios and Postal Supervisor Muse why postal employees are permitted to sign for CT's mail. The answer was the premium signature service mentioned and used by CT in their Federal Caller Service contract agreement to permit Postal Clerk Torres/USPS to sign for all mail as CT's representative. As CT's authorized representative for CT, Torres' signature meets the requirements of Cal. Civ. Proc. Code 116.340.

The plaintiff submitted to Superior Court the certified return receipt card with Torres' signature and a copy of the USPS internet track and ship printout. The Superior Court accepted the two documents as proof of delivery and service of process under Cal. Civ. Proc. Code §116.340[3]. The track and ship printout is an official US Government document from a federal database. ECF 18, Exh. C

---

[3] Under CCCP 116.340, California Superior Court accepts both the signed return receipt card and the USPS Tracking Document showing delivery at the address as proof of service. In this case, the Superior Court accepted the date and time of delivery under CCCP 116.340.

verifies the delivery document used by plaintiff in Superior Court. This acceptance of the federally regulated delivery date should have been the case in District Court as the same CCCP requirements were used in the judgment.

Based upon these factors, the delivery date of August 20, 2021 at 0941 a.m. is the legal date of delivery (ECF 18, Exh. C). Chain of custody was previously discussed from San Diego Superior Court to 818 W. 7th Street, Ste 930, Los Angeles. ECF 18, Exh. C, is only available to USPS employees.

Halow's declaration does not support the chain of custody timeline provided by the USPS federally regulated chain of custody evidence. The USPS has no interest in the outcome of this case. The same information was available to the defendants through the USPS. Federal regulations remove the defendant's hearsay objections.

**(b) DMM Section 1.2.1 Factors.** Under contract with the USPS, CT is required to maintain a database for receipt of certified and registered mail. This database information was not provided by defendants to support the declaration or cure defendant's stated chain of custody issues.

**(c) DMM, Section 508, subsection 2.2. Pickup** regulates the required pickup at the caller service location. Under this regulation, CT is required to pick up mail Monday through Friday at the Caller Service location (by contract). Halow's

declaration lacks substantive chain of custody from the post office to their regional processing center. Based upon the premium signature services provided under CT's contract, this should have been a moot point.

**(d) DMM Section 1.2.1. Factors**, CT is required to maintain an electronic database for certified and registered mail. CT also must enter the date of pickup and processing in their database. Again, this substantive and foundational information was not provided with Halow's declaration creating hearsay.

(1) Mail is picked up in the Los Angeles region by CT's couriers/mail pick up employees. Mail is then delivered to a central processing location to enter mail received into the required electronic database under DMM Section 1.2.1 Factors. Plaintiff, as a soldier, used to complete mail runs to the base post office.

## IV. Failure to Enforce Procedural Rules

### A. Federal Rules of Civil Procedures 7.1 and So. Dist. Cal. Local Rule 40.2.

The plaintiff asserts that the Court violated FRCP 7.1 and So. Dist. Cal. L.R.40.2 by proceeding with this case when defendants failed to provide the required financial interest statement prior to the first appearance. L.R. 40.2 states:

"A party must file a separate statement entitled **"Notice of Party with Financial Interest"** with its initial appearance in the court and must

supplement the statement within a reasonable time of any change in the information." (Southern Dist. LR 40.2).

Based upon the failure of the Court to adhere to Local Rule 40.2, the defendants were provided an unfair advantage in this case. The Court failed to cure the requirement until almost 30 days *after the final response by plaintiff was submitted to the Court.* Due to non-compliance with LR 40-2, Court had discretion to dismiss defendant's case with prejudice.

Defendants were able to argue from September 22, 2021 through November 24, 2021 that the plaintiff filed this case against the wrong firm (ECF 9, pg. 29, ECF 11, ECF 18, Exh. A, ECF 19). Thematically, defendants used this statement in their various pleadings and request for dismissal documents. This false narrative was known to be false by the defendants until the Court signed an order requiring the statement. The theme of "wrong firm" is also contained in the reply to the November 24, 2021 order (ECF 23, other).

Since the first appearance on this removal case was not in person, the date that the case was filed would count as the first appearance. Based upon more than 70 years of legal service to defendant's, the attorneys had knowledge of parent to subsidiary corporate structure before the removal case was filed.

This permitted the defendants to create a “rabbit hole” (also known as using a process to control a process) requiring plaintiff to prove the relationship between the two defendants (ECF 9, pgs. 9-10, ¶1). This “rabbit hole” created the need to research the organizational structure of the defendants and address the corporate structure. The “rabbit hole” created false narratives by the defendants to the Court (ECF 9, pg. 20). This cost the plaintiff time and monetary losses.

This failure by the defendants and Court to adhere to L.R. 40.2, damaged the ability of the plaintiff to respond to the documents accurately. Even after plaintiff filed a first amended complaint to add JP Morgan Chase Bank, NA as a litigant to cure the complaints by defendants of moving against the “wrong firm”; the defendants again stated the lawsuit was filed against the wrong firm. This continued throughout the case prior to the November 24, 2021when the Court ordered the financial interest statement. In the submitted response by defendants they still stated the wrong firm was sued (paraphrased). Defendants continued to use the “Rabbit Hole” to control the process by not submitting required documents. This is an ethical and procedural violation.

**B. Sur-Reply.**

Judge Moskowitz’s Chamber Rules state: “Sur-replies. Sur-replies may not be filed unless leave of Court has been granted.”

On November 15, 2021Regina Harcourt, a Legal Secretary at Stroock, et. al., emailed plaintiff a proposed order granting the motion for Sur-Reply. The document had two blank pages and the proposed order. The actual request for Sur-Reply was not attached to the email. The submission of the proposed motion violates the requirements of Chambers NOT to provide a proposed order and not file the reply without written permission from Chambers/the Court.

Under the Sur-Reply rule, the motion should not have contained the specific case information that would be placed in the Sur-Reply. Rather a motion should have been submitted requesting the Sur-Reply. Something similar to a cover page with case information and a page that states for example, “based upon new evidence (information, etc)…request a Sur-Reply.”

Based upon Harcourt’s email, plaintiff responded to the request for Sur-Reply without the complete ECF 19. When found, the Sur-Reply requested a case extension of 30 days without legal justification. The Court behaviorally granted the extension by not ruling on the case until January 6, 2022.

The Court violated their own Chamber rules. Plaintiff contacted court and spoke to the law clerk regarding the violation of Chamber rules in November 2021. The Sur-reply was still approved by Chambers even with the violation of Court rules. The Sur-reply did not contain new substantive evidence that contradicted the

plaintiff's evidence. The Sur-reply should not have been approved; the defendants violated LR 40-2 and chamber rules. At the time the Sur-reply was filed, the Financial Interest Statement had not been submitted.

**V. Judgment - Misconduct by Defendant**

Ethically and legally the attorneys are required to research information, present facts not conjecture and devise legal strategies that do not violate Federal Statutes, FRCP, Local Rules, or Chamber Rules (*See ECF 9generally(Complaint))*.

Attorney misconduct is defined as unethical or illegal conduct in contradiction with the established rules of professional conduct. In this case, there are multiple points of misconduct by the attorneys that have impacted the outcome of this removal case. Prior to judgement, plaintiff requested action by the Court, verbally and through her pleadings, based upon misconduct and false statements by the defendant's attorneys (Judgment page 7 ¶2, lines 8-20). There were no admonitions to the attorneys, and the judgment clearly shows a lack of concern in the judgment by the Court. The misconduct evidence is within the case file.

In the judgment, the Court stated that the "Plaintiff's allegations of any misconduct by defendant are speculative, conclusory, and without any evidentiary support." It is not speculative or lacking evidence that the defendants violated procedural rules. The case is fraught with conjecture (i.e., ECF 11) by claiming

mail was forwarded to Glendale address for certified receipt 7020 1810 0002 0438 8491 (ECF 18, Exh. C) without providing chain of custody hard evidence to the Court. USPS is a federally regulated corporation through the DMM and Agency oversight. Attorneys created a false narrative to win case.

These types of false and misleading statements provide the Court a false foundation for a judgement for the defendants without actual proof. The Court continues to permit violation of the Fed. R. Evid. by not requiring complete and factual foundational evidence (Fed. R. Evid. 104, 602, 801, 901). Instead, the Court ruled, incorrectly, that plaintiff agreed with declaration.

The Court did not take the misconduct complaints seriously. As a result, plaintiff had filed a legal complaint outside of the Court by a California investigative body citing potential perjury, violation of California Business Codes, and misconduct in this case with complete available evidence in December 2021. As a psychologist the behaviors of the defendants and attorneys have a behavioral basis to win at any cost. Trader initiated a settlement phone call, on November 11, 2021. During the call, plaintiff asked Trader why he "suborned perjury" (RE: Halow). His statement was that "CT Corp committed perjury" (not Strook). When plaintiff stated the declaration was written on Strook's pleading form, he changed

the subject. Stroock solicited the declaration (*See* Declaration and Sur-Reply this document).

The Court has continually permitted violations of statutes, evidence, and procedural rules in this case to the point that the plaintiff was unable to cogently respond to the various "rabbit holes" presented by the defendant's attorneys based upon these violations. These are potential violations of CalBar rule 8.4 and 18 U.S.C. §1621 and §1623. The Court has ignored plaintiff's past complaints.

**VI. Financial Impact**

The judgment discounts the financial impact to the plaintiff stating that the plaintiff was not harmed. As the defendants provided a hearsay document without substantive evidence, did not meet timely filing requirements based upon ECF 18, Exh. C, and the statutory requirements described regarding "within 30 days", the fiscal impact should not be discounted. Judgment (pg. 7, ¶2) discounts plaintiff's statements and factors regarding the date of removal leading to a non-judgment for financial losses.

Plaintiff's firm was awarded a subcontract for services to the Navy under a $50Billion contract in August 2021. The subcontract uses Indefinite Delivery, Indefinite Quantity (IDIQ) contract vehicle requiring application for each specific contract. This is similar to Strook, et. al. applying for contracts with Emerald

Energy in Texas. From September 25 to December 15, 2021 and January 10-present, plaintiff has not been able to apply for the available contracts in order to respond to case. This impacted both plaintiff and her firm financially. In ECF 9, plaintiff describes financial harm that was ignored.

**VII. Federal Question Court of General Jurisdiction**

a. **Hearsay and lacking foundation.** Based upon the ignored evidence (ECF 18, Exh. C), the defendants failed to provide a chain of custody. Plaintiff clearly objected to Halow's declaration as lacking foundation and hearsay (ECF 18, pgs. 24-26). USPS chain of custody shows the acceptance by USPS and delivery by USPS (ECF 18, Exh. C). The evidence and objection were summarily ignored in favor of defendants' hearsay declaration. Based upon the hearsay declaration and lack of chain of custody by defendants, Halow creates evidentiary hearsay.

To win the removal case, the defendants must first prove they met the removal notice period of "within 30 days" under 48 U.S.C. §1446(a)(b). Based upon evidence presented in this document and Halow's hearsay evidence, the removal period was not met since removal was filed on September 22, 2021.

**b. Court of General Jurisdiction.**

(1) **Applicable legal standards.** Plaintiff has previously provided legal case law standards in multiple pleadings. Id. (ECF 9, pgs. 21, IV Argument, 22 ¶2,

lines 24-28, 23 ¶1, 24 ¶1, 24 lines 16-19, 26, lines 8-14). Case law states that "Federal courts look only to a plaintiff's pleadings to determine removability" (Self, 588 F. 2d at 655). "*Federal Jurisdiction must be rejected if there is any doubt as to the right of removal in the first place*." Guas V. Miles (ECF 9, pg. 26). Under Fed. R. Evid. Halow's declaration is hearsay and lacks substantive evidence to prove beyond a reasonable doubt that removal was warranted.

(2) **Superior Court.** California Superior Court is a court of competent jurisdiction tied to general jurisdiction (ECF 18, pg. 20-21). Defendants have historically used the Superior Court to file against litigants and participate as defendants in these cases (ECF 9, pgs. 7 ¶2, 8, ¶2, 9¶1-2, 12 lines 23-27, 13 lines 1-4, 19 #5). Defendants have participated as plaintiffs and defendants in Superior Court FCRA cases (descriptions ECF 18, pgs. 22-23, *See People v. JP Morgan Chase & Co., ECF 18 pg. 2*, violations of the Fair Credit Reporting Act and California Business and Professions Code Section 17200 et. seq). Plaintiff's claims include California Consumer Reporting Agencies Act requirements and California Unfair Business Practices (ECF 18, pg. 19; ECF 9, pg. 12).

(3) **Superior Court, generally**. The Superior Court is authorized and routinely hears federal credit and collection complaints and California Fair Credit Act (CCP §§116.110-115.950). Under 48 U.S.C. §1446(b) defendants must meet

timely filing requirements before any other removal questions are considered. The plaintiff had previously outlined (ECF 18); defendants failed to meet timely filing requirements. Plaintiff also outlined Court procedural violations impacting case responses by plaintiff. Defendants have historically used the Superior Court to file against litigants and participate as defendants in these cases (ECF 9, pgs. 7 ¶2, 8, ¶2, 9¶1-2, 12 lines 23-27, 13 lines 1-4, 19 #5). These cases are tied to the FCRA (FCRA) without a State cause of action. The use of Superior Court by defendants is exemplified in multiple cases listed in plaintiff's responses (ECF 18, generally). In 2021, plaintiff had another non-remanded Small Claims case with similar language to this case citing FCRA. The case was resolved by the parties through a settlement agreement. Plaintiff permitted the case to be dismissed with prejudice.

**(4) Motion to Dismiss**

Plaintiff's small claims case provided a short, plain statement of the claim. Based upon CCCP procedures, plaintiff filed a brief case history and then mailed evidence to the defendants under Superior Court regulations. To apply Fed. R. Civ. P. filing standards to a California Small Claims Act case that did not have an order of removal until January 6, 2022, is not sufficient weight to dismiss the case since the application of Fed. R. Civ. P. is outside of the jurisdiction of the court as Superior Court maintained jurisdiction until January 6, 2022. The disparity

in filing and documentation standards between Superior Court Small Claims Division and District Court is why plaintiff is provided 45 days to prepare a new case under Fed. R. Civ. P. Based upon the dismissal motion the defendants erred in the application of the statutes. The case should have been dismissed with prejudice based upon defendant's hearsay evidence and factors outlined here within (ECF 18, Exh. C).

**a. Direct Consumer Complaint to Furnisher**. Plaintiff filed consumer complaint to three credit bureaus April 5, 2021 and then a direct dispute under 12 CFR 1022.43 (1)-(3). Under 12 CFR §1022.43 (c)(3) dispute was hand delivered to furnisher May 26, 2021. Defendants failed to respond timely in violation of the CFPB Administrative Proceedings, 2017-CFPB-0015 consent order (pgs. 8-9, items 29, 30, 31, 25, ECF 18 pg. 29-30) (Exh. 1). Judgment (pg. 11) states erroneously that plaintiff did not file a CRA dispute. The incorrect legal standard for direct disputes were applied in judgment. Also, Bryan Trader in small claims court January 10, 2021 stated his firm wrote the Judgment for the court.

## Conclusion

Based upon the facts, plaintiff motions the court 1 vacate judgment, 2 set a new trial plaintiff requests court vacate judgment and authorize a new trial.

Dated: January 24, 2021

________________________________

Dr. Helen L. Horvath, Plaintiff, In Pro Per